## UNION ASSUR. SOC., Limited, v. MIAMI JOCKEY CLUB.

### No. 9151.

Circuit Court of Appeals, Fifth Circuit.
March 7, 1940.

Rehearing Denied April 19, 1940.

See 111 F.2d 145.

Herbert S. Sawyer, M. L. Mershon, and W. O. Mehrtens, all of Miami, Fla., for appellant.

James A. Dixon, of Miami, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The suit is on a policy of liability insurance issued by Union Assurance Society to Rolfe Armored Truck Service, Inc. (called herein Rolfe), "for account of whom it may concern," to cover loss or damage in transportation of money and other valuables by armored cars in and around Miami. Rolfe was a private carrier for hire and Miami Jockey Club was a patron which operated a race track and had large sums of money transported on racing days from its race grounds to the bank. We held in Miami Jockey Club v. Union Assurance Society, 5 Cir., 82 F.2d 588, 589, that "The plaintiff, a shipper, is entitled to enforce the policy in its own name if the carrier has become liable to it for loss or damage to shipper's goods within the policy provisions." In the present case a locked moneybag containing $6,753 which had been delivered to Rolfe by the Jockey Club was lost before it was put into the armored car. The contested questions were as to when the insurance coverage attached, and for what purpose Rolfe had in fact accepted possession of the money. The jury found for the plaintiff. The errors asserted are two, that the court should have granted the defendant's motion for an instructed verdict; and should have sustained the objection to a question asked in a deposition.

■ The policy states that it insures coin, paper money, and other stated things for a period of one year from Sept. 15, 1934, to Sept. 14, 1935, inclusive (3) "While being transported by armored cars owned and operated by assured, and/or while being delivered to or from such armored motor cars, within a radius of seventy-five miles from the City of Miami, Florida. * * * (4) It is understood that the risk hereunder is to attach from the time that the property is delivered to the assured's care and their responsibility commences, until such time as a receipt for delivery, signed by the consignee or their duly authorized representative has been given to the assured; or in the event of non-delivery, until returned to the consignor. (5) It is the intent of this policy to cover the legal liability of the assured, whether as common or private carriers and whether assumed by contract or otherwise, for loss of or damage to property as described in paragraph (1) from any cause whatsoever, including any act or omission of any employee of assured." Under these provisions the money does not have to be put in the armored car to be covered, and by express provision the risk attaches from the time it is delivered into Rolfe's care and his responsibility for it commences. From that moment his liability for loss or damage to it from any cause whatsoever is insured against.

■ It is proven without dispute that on March 8, 1935, at the close of the races, two locked bags of money were delivered into the possession of Rolfe's agent in charge of the armored truck, which was parked on the grounds, by an agent of the Jockey Club in charge of the admissions office. Rolfe's agent took them by the general offices of the Jockey Club and picked up there another locked bag of money. He then took all three of these bags to the Jockey Club's pari-mutuel office, where the money bet on the races was paid in and out, to be put into a tin receptacle in which the pari-mutuel money was to be locked when counted, and pushed them through a window and departed. A few minutes later he returned, took the locked tin receptacle, gave a receipt for it "Contents unknown" to the pari-mutuel cashier, put it in the truck and carried it to the bank. This was all done in accordance with a custom. The next morning when the receptacle was opened one of the bags taken up at the admissions office was missing.

The admissions office cashier testifies that he gave Rolfe's agent two locked bags. Rolfe's man testifies that he received two bags and put them both, along with the third bag taken up from the general office, through the window of the pari-mutuel office, and attracted the notice of the cashier therein before he went away. This cashier testifies he did not see Rolfe's agent put the bags in, but after he was gone turned and found not three but two bags, and put them in the tin container, and after counting his own money and making out his deposit slip put them in also and locked the container and later delivered it to Rolfe's agent. The missing bag never got into the tin container. The jury could have found either that Rolfe's agent took it away, or that he negligently left it unguarded in the window and someone else took it. In either case Rolfe would be liable for its loss.

But it is urged that the insurer would not be liable, because the bag when lost was not being transported in the armored car nor being delivered to it, nor was any money ever delivered to Rolfe as carrier until he received the tin container and gave his receipt for it. Rolfe testified in effect that

in getting the bags from the two other offices and bringing them to the pari-mutuel office to be put into the tin container he was acting at the request of the Jockey Club to aid it in making up the shipment, which he did not receive as carrier until he gave a receipt for it. This theory is supported also by the circumstance that no receipts were taken at the admissions office or the general office for the bags taken up there. The jury could no doubt have found it true. But against it is the fact that Rolfe could not say who it was that requested this voluntary service of him, and the testimony of the pari-mutuel cashier is that Rolfe asked him to be allowed to put the bags in the pari-mutuel cash container for his own convenience. It is testified that the general office, the admissions office and the pari-mutuel offices were run independently, each having its own cashier and cash, that neither had any authority over the other, and a separate deposit slip was put in each office's sack before it was locked. The head of each office and the president and treasurer of the Club denied any knowledge of the custom of taking the bags to the pari-mutuel office and putting them in the pari-mutuel container. The Club had an abundance of employees, including many armed guards, which it could have used to assemble its monies at one office if it desired. Rolfe's employment was by an oral agreement to transport the money for $40 per day, with no details mentioned. Under all the evidence there was a fair issue of fact for the jury as to whether Rolfe's agent, when he called for the locked sacks at the admissions office, received them as carrier to be delivered in such manner as he chose to the armored car, or whether as an accommodation to the Club he was taking them to the pari-mutuel office. The motion to instruct the verdict was rightly overruled.

In the deposition of the person in the admissions office who delivered the sacks he testified: "On March 9, 1935, we were notified that the bank did not receive one of the bags containing part of our deposit made on the afternoon of March 8." Question: "Do you know who received the bags from your department for delivery to the bank?" Ans. "A representative of the Armored Truck Co." At the trial the quoted question was objected to on the ground that it assumed the money was turned over for delivery to the bank, which was a contested matter. The witness had just said the money did not get to the bank, and the question was in a natural sequence. If the witness had been present before the court it would have been proper to have the question put in another form; but as he was not, we cannot say discretion was abused in refusing to exclude the answer. Cross-examination was an open remedy to ascertain what the witness really meant to say. There was a lengthy cross-examination, but no questions asked on this point.

Judgment affirmed.

FOSTER, Circuit Judge (dissenting).

The majority opinion correctly recognizes that the question at issue is whether the bag of money had been delivered to Rolfe for transportation to the bank at the time it disappeared. It is immaterial whether Rolfe's agent collected the various bags of money for his accommodation or that of the Jockey Club. It was the custom after picking up the various bags to deliver them to the cashier to be put in a box for shipment. It could hardly be said the cashier was an agent of Rolfe for the purpose of facilitating the shipment of money of his employer.

In my opinion transportation to the bank did not begin with the delivery of separate bags of money to Rolfe's agent. Before that journey started the separate bags of money went back into the custody of the Jockey Club. Transportation covered by the policy had not begun when the loss occurred and the risk of the policy had not attached, whatever may have been the responsibility of Rolfe individually. The insurer was entitled to a directed verdict.

For these reasons I respectfully dissent.